Kathleen PHILLIPS, Rebecca McGaffick, Edna Greeley, Donna Mareno and Raymond Mareno, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, a Public Corporation, Kenneth Reeher, Individually and in his capacity as Executive Director of the Pennsylvania Director of Pennsylvania Higher Education Assistance Agency and Charles H. Russell, Individually and in his capacity as Assistant Deputy Director, Loans, Pennsylvania Higher Education Assistance Agency, Defendants.

Civ. A. No. 78–975.

United States District Court,
W. D. Pennsylvania.

Feb. 21, 1980.

On Motions for Class Certification and Summary May 28, 1980.

Edward A. Olds, James W. Carroll, Jr., Thomas C. Reed, Neighborhood Legal Services Assn., Pittsburgh, Pa., for plaintiffs.

Robert Barton, Harrisburg, Pa., Alvin J. Ludwig, Pittsburgh, Pa., for defendants.

## FACTS

TEITELBAUM, District Judge.

Plaintiffs instituted this action seeking permanent injunctive and declaratory relief on a class–wide basis from the conduct of defendants, Pennsylvania Higher Education Assistance Agency (hereinafter PHEAA), Kenneth Reeher, the Executive Director of PHEAA, and Charles Russell, Deputy Director of PHEAA, which includes:

1. use of distant forum process to cause an adjudication of plaintiffs' liability to defendants as a result of plaintiffs' purportedly defaulting on loan obligations guaranteed by PHEAA pursuant to administering an insured student loan program under Title IV B of the Higher Education Resources and Assistance Act of 1965, 20 U.S.C. § 1071, et seq. and 24 P.S. § 5401, et seq.; and

2. the systematic demand for judgment in an amount in excess of the maximum sum PHEAA would be entitled to collect under state law by claiming an entitlement to attorneys' fees. Plaintiffs seek relief from the conduct based upon 42 U.S.C. § 1983, the Higher Education Assistance Act, and request this court to assume pendent jurisdiction of state law claims of plaintiff arising out of the Pennsylvania Unfair Trade Practices and Consumer Protection Law. 73 P.S. § 201–1, et seq.

Plaintiffs have filed a motion for an order certifying two sub–classes of indigent persons residing in Allegheny, Beaver, Butler and Lawrence Counties. One sub–class consists of all persons who have already been sued by PHEAA. The other consists of persons who have incurred a guaranteed student loan obligation, whose obligation has been declared to be in default, but against whom no suit has as yet been filed.

An application to intervene in the action was filed by plaintiffs' counsel on behalf of Donna and Raymond Mareno in January of 1979. Intervenors filed a complaint challenging confession of judgment procedures used to cause entry of judgment on a purported student loan obligation in a distant forum. Intervenors sought permanent injunctive and declaratory relief from PHEAA's conduct on essentially the same legal theories as original plaintiffs. The application to intervene was granted by this Court.

Pending before the Court now is plaintiffs' motion for class certification, plaintiffs' motion for summary judgment, and defendants' motion for summary judgment.

By its enabling legislation, PHEAA is "... a body corporate and politic constituting a public corporation and government instrumentality ..." 24 P.S. § 5101. PHEAA's initial goal was to guarantee loans made for the purpose of securing higher education for persons residing in the Commonwealth of Pennsylvania. PHEAA has subsequently been authorized to provide grants to students for the purpose of securing higher education, to fund certain work study programs for persons pursuing higher education, to award cash grants to private institutions of higher education in the Commonwealth of Pennsylvania, to provide cash grants for children of prisoners of war and war veterans, and other similar purposes. See 24 P.S. § 5101, et seq.; 24 P.S. § 5161, et seq.; 24 P.S. § 5171, et seq.; 24 P.S. § 5181, et seq. This litigation involves the allegedly illegal actions of PHEAA which arise from certain procedures followed by it in its administration of the guaranteed student loan program.

A person requesting a PHEAA guaranteed loan initially obtains an application for that loan from, in most cases, a bank or other lending institution. The student completes certain questions on that application, and then secures certification from the educational institution at which attendance is anticipated. As the application form indicates, the financial aid officer or other responsible official at that school indicates the amount of money which the student reasonably requires to finance his or her education. The application is then returned to the lending institution from which it was originally secured, and an official there indicates the amount of money which it will loan to the student if PHEAA will guarantee the loan. The application is then submitted to the administrative offices of the PHEAA in Harrisburg, where an internal review is undertaken. PHEAA's internal administrative review process is performed entirely in the City of Harrisburg, County of Dauphin. If the PHEAA determines to guarantee the loan, the student borrower, the lending institution, and the educational institution are notified by letter.

PHEAA's guarantee obligates it to purchase the note, by paying to the lending institution the full amount due thereon, if the student borrower defaults on repayment for any reason. After the purchase of that note, PHEAA engages in extensive efforts to induce its debtors to repay their obligation. These efforts include verbal and written contact with the debtor to determine the reasons for default and to encourage the payment of a minimal monthly amount to reduce the principal. If a debtor

makes no payment on the PHEAA's guaranteed loan within five and one–half years, PHEAA must institute legal action against that debtor to prevent the debtor from raising the defense that the Statute of Limitations for such a suit has expired. In almost all cases, legal action is commenced in the Court of Common Pleas of Dauphin County, Pennsylvania. PHEAA has chosen to use that forum for several reasons, some of which are its convenience, the cooperation accorded to the agency by the personnel staffing that court, the fact that the transaction or occurrence which gave rise to the agency's cause of action took place in Dauphin County, and the fact that the Dauphin County Court of Common Pleas has determined the venue provisions of the Pennsylvania Rules of Civil Procedure authorize the agency to initiate such action in that court. *PHEAA v. Christon,* 100 Dauph. 58 (1978), affirmed 42 Pa.Cmwlth. 165, 400 A.2d 1329 (1979); *contra PHEAA v. Devore,* —— Pa. Super. ——, 406 A.2d 343 (1979).

The legal action has a very minimal effect, if any, in encouraging repayment. Suit is initiated solely to toll the statute of limitations and if there were no statute of limitations, PHEAA indicates that it would not sue its debtors. If PHEAA were forced to initiate its litigation in the debtor's county of residence, it contends the increase in administrative expenses would be significant although specific evidence of the magnitude of increased expenses has not been presented to this Court.

The manner in which the representative plaintiffs in this case came to the attention of the PHEAA should be briefly discussed. Plaintiff Phillips applied to PHEAA for a guaranteed loan in the amount of $1000 from Pittsburgh National Bank on September 12, 1969, and the loan proceeds were subsequently disbursed by the Bank. Sometime in 1970, plaintiff Phillips submitted another application for a guarantee in the amount of $1500 from the same Bank to attend the same educational institution. That guarantee was approved on September 8, 1970 and the loan proceeds were subsequently disbursed. Her repayment period commenced on March 1, 1972 and on or about April 1, 1972 she executed a promissory note obligating her to repay the amount of $2500 in sixty monthly installments. She made no payments on that note and it was purchased by the PHEAA from the lending institution on September 5, 1972.

Plaintiff McGaffick applied to PHEAA for her guaranteed loan on September 6, 1969 and that guarantee was approved by the agency on January 21, 1970. After her execution of an installment note, plaintiff McGaffick made 16 installment payments thereon for total payments of $505.92, but she defaulted thereafter, so that PHEAA purchased her note on November 5, 1972.

Plaintiff Greeley applied to PHEAA for her guaranteed loan from Dollar Savings Bank on May 14, 1975, to attend the Sawyer School. The guarantee was made on June 4, 1975, and on October 14, 1976, plaintiff Greeley executed another note obligating her to repay her loan in monthly installments. She made no such payments, and the agency purchased the note from the lending institution on April 8, 1977.

Intervenor plaintiff Mareno applied to PHEAA for a guaranteed loan from Union National Bank and guarantees in the amount of $2,650 were approved. Plaintiff Mareno used the loan proceeds to attend California State College, and on September 12, 1968, she executed a note obligating her to repay that loan in monthly installments. She has defaulted in her repayments on that loan, and has written to PHEAA on three occasions explaining that her failure to make payments was because she did not have sufficient funds.

PHEAA initiated legal action against plaintiff Phillips on June 22, 1978 and against plaintiff McGaffick on July 26, 1978. Plaintiff Greeley has not yet been sued. PHEAA initiated legal action against plaintiff Mareno on September 22, 1978 via a confession of judgment. After filing and service of the complaint, PHEAA takes no further legal action against its debtors, but it does continue to engage in collection activity in the form of telephone and written communications with the debtors. The exception involves persons who

the PHEAA has determined are engaged in gainful employment within the state and whose wages the agency is thereby authorized by law to garnish. PHEAA determines the persons against whom it shall have writs of garnishment issued by reviewing the income of those persons. PHEAA does not execute upon the wages of all persons who hold employment; rather they execute against the wages only when it is determined that those wages exceed a certain subsistence level as determined by the PHEAA.

The representative plaintiffs have not had their wages garnished, because these plaintiffs have no wages. There will be no garnishment issued against them until PHEAA determines that they do have wages in amounts exceeding its subsistence level. PHEAA has filed complaints in assumpsit against plaintiffs Phillips, McGaffick and Greeley and confessed judgment against intervenor Mareno, but has made no effort to take any other legal action against those plaintiff–debtors.

Prior to February 5, 1979, all complaints prepared and filed by the PHEAA requested the repayment of reasonable attorneys' fees in addition to repayment of principal and accumulated interest on the underlying note. Some of the notes upon which suit was brought expressly authorize the recovery of such attorneys' fees, and some notes do not contain such an express authorization. Due to delays between preparation of the complaints and their filing, some complaints filed between February 5 and April 1, 1979 have contained such demands. The PHEAA has indicated it does not now demand attorneys' fees when the promissory note upon which the suit is based does not expressly authorize the recovery of such sums and the agency will not collect any amount of money for attorneys' fees in the future if the promissory note executed by the debtor does not expressly authorize such recovery.

This litigation, in a nutshell, attempts to enjoin the PHEAA from demanding and collecting attorneys' fees when the promissory note executed by the debtor does not authorize the collection of such fees; and further seeks to enjoin the Agency from filing suit in Dauphin County when the person against whom suit is filed resides in a four–county area in Western Pennsylvania and the person's financial situation is such that he or she could not afford to travel to Dauphin County to defend against such lawsuits.

## CLASS CERTIFICATION

Plaintiffs have filed a motion to have this action certified as a class action with two sub–classes. Plaintiffs Phillips, McGaffick and Mareno would represent the members of one sub–class, defined as all low income residents of Allegheny, Beaver, Butler or Lawrence Counties who have been sued by defendant PHEAA in Dauphin County, Pennsylvania. Plaintiffs Phillips and McGaffick have been sued by the institution of a complaint in assumpsit, while plaintiff Mareno has been sued via a confession of judgment. Plaintiff Greeley would represent the members of the second sub–class, defined as all low–income residents of Allegheny, Beaver, Butler or Lawrence Counties who will be sued by PHEAA in Dauphin County, Pennsylvania.

The starting point for analysis of the appropriateness of class action treatment in the case *sub judice* is the actual language of Rule 23 of the Federal Rules of Civil Procedure. Rule 23(a) provides:

"One or more members of a class may sue or be sued as representative parties on behalf of all only if 1) the class is so numerous that joinder of all members is impracticable, 2) there are questions of law or fact common to the class, 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and 4) the representative parties will fairly and adequately protect the interests of the class."

The plaintiffs in the instant case are seeking certification of the class under Rule 23(b)(2). Therefore, in addition to the general prerequisites of Rule 23(a), the condition imposed by Rule 23(b)(2) must also be met. Rule 23(b)(2) provides:

"The party opposing the class has acted or refused to act on grounds generally

applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole;".

Only if both Rule 23(a) and Rule 23(b)(2) are satisfied can the instant action proceed on behalf of the class requested.

Little time need be spent discussing the requirement of Rule 23(a)(1) that the number of members of the proposed class be so great as to make joinder impractical. PHEAA agrees that it has sued numerous people who live in the four county area in which the plaintiffs live. PHEAA also admits that numerous people sued by it in that area are unable to afford a trip to Dauphin County. Where 50,000 loans are in default statewide, 3,000 lawsuits have been filed statewide, 300 new lawsuits are filed each month, and 10% of the persons whose loans are in default suffer extreme hardship, numerosity is certainly not a barrier to class certification.

The commonality requirement contained in Rule 23(a)(2), unlike 23(b)(3), does not require that questions of law and fact predominate, but only that there be questions of law or fact common to the class. There are questions of law and fact common to the claims of the named plaintiffs and those of the class. Harrisburg is approximately as far away for both the plaintiffs and the class members. It is equally difficult for every low income person to travel to Harrisburg from the four county Western Pennsylvania area. Additionally, each suit filed by PHEAA arises out of PHEAA's administering of the guaranteed student loan program. To the extent that certain laws might provide protection from the use of a distant forum they will govern the rights of all class members. Thus, the requirement of 23(a)(2) is met.

As a basis for satisfying Rule 23(a)(3), plaintiffs have alleged that as a result of poverty they and the other members of the proposed class will typically be unable to travel to Harrisburg to defend against the defendant's state court action against them. PHEAA contends that plaintiffs' claims against it are not typical of the claims of

the class primarily because the named plaintiffs have no defenses to the state court action. The issue here, however, is not who will ultimately win the state court action. The issue is whether the defendant PHEAA is acting illegally by bringing the state court action in a distant forum. There is an alleged denial of an "opportunity" to present claims in the state court action. Consequently, plaintiffs' claims against PHEAA are typical of the class in that every member of the proposed class is allegedly being denied an "opportunity" to test PHEAA's state court action.

■ Similarly, PHEAA challenges plaintiffs' ability to adequately represent the interests of the class because they allegedly lack defenses to the state court action. As just mentioned, however, the presence or lack of defenses to the state court action is immaterial to the relief sought. Each plaintiff here is seeking an opportunity to be heard. Denial of the relief they have requested will effectively deprive them of an opportunity to defend against the state court action. There is every reason to believe that the representative plaintiffs in the instant action will provide much more than adequate representation. Having concluded that representative plaintiffs satisfy all of the requirements of Rule 23(a), it is now incumbent upon this Court to turn to the additional criteria of Rule 23(b)(2).

Rule 23(b)(2) necessitates the presence of two factors in addition to those previously discussed in Rule 23(a) before the instant class can be certified. Those factors are:

1. PHEAA must have acted or refused to act on grounds generally applicable to the class;

2. Final injunctive relief or corresponding declaratory relief with respect to the class as a whole must be appropriate.

There is little question that PHEAA has acted on grounds generally applicable to the class. Lawsuits are uniformly filed in Dauphin County without regard to place of residence or income of the alleged defaulting defendant. Troublesome considerations, however, arise in determining wheth-

er final injunctive relief or corresponding declaratory relief with respect to the class as a whole is appropriate.

PHEAA initially contends that class treatment is inappropriate in the case *sub judice* because any decision by this Court would have the effect of both stare decisis and collateral estoppel. Future lawsuits would therefore be governed by the decision in this action even though not litigated as a class action. This alternative to class certification is popularly known as the "test case" approach. While PHEAA appears to be correct in indicating that any decision by this Court could be applied through either stare decisis or collateral estoppel, its suggestion loses sight of the focal point of the instant litigation. The *sine qua non* of plaintiffs' allegations is the contention that they are being denied access to the judicial system. If that be the case, the defaulting parties would never have the opportunity to suggest the application of stare decisis or collateral estoppel. Final injunctive relief or corresponding declaratory relief with respect to the class as a whole under these circumstances is more appropriate than a test case approach.

Another factor to be evaluated in assessing the appropriateness of class action treatment is whether or not the class can be defined. One of the distinguishing characteristics of the requested class in the case *sub judice* is poverty. Class members are said to be low income individuals who cannot afford to travel to Harrisburg for purposes of defending against lawsuits instituted by PHEAA. While this Court believes that appropriate definitional guidelines can be fashioned, at this juncture the information provided to the court is insufficient to enable definition of the term "low income individuals". The parties are therefore directed to submit their suggested guidelines for definition of the term low income individuals to this Court within two weeks of the date of this Opinion. Upon receipt of satisfactory information as to the proper definition of low income individuals for purposes of the instant lawsuit, this Court will deem the requirement of Rule 23(b)(2) to be satisfied.

Other than inability to precisely define "low income individuals" as used in plaintiffs' request for class certification, the Court deems all of the requirements of Rule 23(a) and Rule 23(b)(2) to be satisfied in the case *sub judice*. Upon receipt of information permitting reasonable definition of "low income individuals", this Court fully intends to certify the class. Until such definition is possible, the Court must reserve decision on the motion for class certification. Furthermore, it would be inappropriate to rule on the cross motions for summary judgment prior to a decision on the motion for class certification. The future course of the instant litigation will therefore be the filing of suggested criteria for definition of "low income individuals" within two weeks of the date of this Opinion followed by a ruling on the motion for class certification and thereafter on the cross motions for summary judgment. An appropriate order will issue.

## ON MOTIONS FOR CLASS CERTIFICATION AND SUMMARY JUDGMENT.

Plaintiffs instituted this action seeking permanent injunctive and declaratory relief on a class–wide basis from the conduct of defendants, Pennsylvania Higher Education Assistance Agency (hereinafter PHEAA), Kenneth Reeher, the Executive Director of PHEAA, and Charles Russell, Deputy Director of PHEAA, which includes:

1. Use of distant forum process to cause an adjudication of plaintiffs' liability to defendants as a result of plaintiffs' purportedly defaulting on loan obligations guaranteed by PHEAA pursuant to administering an assured student loan program under Title IV B of the Higher Education Resources and Assistance Act of 1965, 20 U.S.C. § 1071 *et seq.* and 24 P.S. § 5401 *et seq.*; and

2. The systematic demands for judgment in an amount in excess of the maximum sum PHEAA would be entitled to collect under state law by claiming an entitlement to attorneys' fees. Plaintiffs seek relief from the conduct based upon 42 U.S.C. § 1983, the Higher Education Assist-

ance Act, and request this Court to assume pendent jurisdiction of state law claims of plaintiff arising out of the Pennsylvania Unfair Trade Practices and Consumer Protection Law. 73 P.S. § 201–1, *et seq.*

Plaintiffs have filed a motion for an order certifying two sub–classes of indigent persons residing in Allegheny, Beaver, Butler · and Lawrence Counties. One sub–class consists of all persons who have already been sued by PHEAA. The other consists of persons who have incurred a guaranteed student loan obligation, whose obligation has been declared to be in default, but against whom no suit has as yet been filed.

An application to intervene in the action was filed by plaintiffs' counsel on behalf of Donna and Raymond Mareno in January of 1979. Intervenors filed a complaint challenging confession of judgment procedures used to cause entry of judgment on a purported student loan obligation in a distant forum. Intervenors sought permanent injunctive and declaratory relief from PHEAA's conduct on essentially the same legal theories as original plaintiffs. The application to intervene was granted by this Court.

By Opinion and Order dated February 21, 1980, in the instant case, this Court requested information relevant to defining "low income individuals" for purposes of class certification. Having received such information from the parties, the Court is now in a proper posture to pass upon plaintiffs' motion for class certification, plaintiffs' motion for summary judgment and defendants' motion for summary judgment.

*CLASS CERTIFICATION*

■ A detailed discussion of all criteria relevant to class certification can be found in the February 21, 1980 Opinion in the case *sub judice.* This Court found all requirements necessary for class certification to be present except for an adequate definition of "low income individual." Upon consideration of suggested standards for an appropriate definition of "low income individual", the Court adopts the guidelines used to establish eligibility for entitlement to social services under Title 20 of the Social Securi-

ty Act, 42 U.S.C. § 1397, *et seq.* This standard establishes 40% of the median income of Pennsylvania citizens as the outer boundary. Any individual with less than 40% of the median income of Pennsylvania citizens would qualify as a low income individual. This is consonant with legal representation of the class by the Neighborhood Legal Services since legal service clients are screened under the same standards.

PHEAA suggests that it will have a problem with identification of low income individuals under this standard because information concerning both family size and family income is not available to it. PHEAA therefore contends that it will be unable to determine whether or not a potential defendant is a member of the class. The concern of PHEAA, while well founded, is easily remedied. The agency should send a questionnaire by certified mail to the potential defendant requesting information on the defendant's family size and family income. Along with the questionnaire, a general explanation of the purpose for requesting such data can also be enclosed. When the data is returned, PHEAA will then be able to determine whether or not the defendant qualifies as a class member. If no response is received within a reasonable time, PHEAA would then be free to institute suit in Harrisburg.

· In accordance with the foregoing procedures, this action will be certified as a class action with two sub–classes. Plaintiffs Phillips, McGaffick and Mareno will represent the members of one sub–class, defined as all low income residents of Allegheny, Beaver, Butler or Lawrence Counties who have been sued by defendant PHEAA in Dauphin County, Pennsylvania. Plaintiff Greeley will represent the members of the second sub–class, defined as all low income residents of Allegheny, Beaver, Butler or Lawrence Counties who will be sued by PHEAA in Dauphin County, Pennsylvania. For purposes of both sub–classes, low income residents are persons with incomes below 40% of the median income for Pennsylvania residents of similar family size.

*MOTIONS FOR SUMMARY JUDGMENT*

██ Insofar as plaintiffs' complaint seeks to prevent the collection of monies for attorneys' fees unless the promissory note executed by the debtor expressly authorizes such recovery, there is really very little in dispute. Both parties agree that PHEAA has requested attorneys' fees from defaulting students where such fees are not explicitly authorized by the loan agreement. Both parties also agree that any such awards for attorneys' fees would be improper. PHEAA, however, contends that an injunction is unnecessary because it has discontinued the practice and will not attempt to collect monies for attorneys' fees where sought in complaints previously filed. To insure fruition of PHEAA's good intentions, the Court will nonetheless enter an injunction prohibiting the collection of attorneys' fees except where specifically authorized by the loan agreement. PHEAA is thus required to do no more than that which it intends. The only remaining concern, therefore, is the propriety of instituting all lawsuits in Harrisburg.

Plaintiffs' primary legal theory in attacking the filing of all lawsuits in Harrisburg is grounded upon 42 U.S.C. § 1983. Section 1983 provides as follows:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

There are two essential predicates to a cause of action under Section 1983:

1. PHEAA must have acted under color of state law, and

2. Plaintiffs must have been deprived of rights secured to them by the Constitution.

PHEAA's acts occurred under color of state law. PHEAA exists by virtue of an enactment of the Pennsylvania legislature in which it was designated as "a body corporate and politic constituting a public corporation and government instrumentality." 24 P.S. § 5101. Additionally, filing of all lawsuits in Harrisburg by the PHEAA is encouraged as a result of favorable state venue provisions. These factors indicate that PHEAA is acting under color of state law.

The issue of whether or not plaintiffs have been deprived of any rights secured to them by the Constitution is decidedly more complex. Plaintiffs posit two theories in this regard:

1. PHEAA's invocation of the judicial system in a distant forum denies plaintiffs a meaningful opportunity to be heard in violation of the due process clause of the Fourteenth Amendment to the United States Constitution.

2. PHEAA's conduct constitutes tortious activity which violates rights secured to plaintiffs under Section 1983. Plaintiffs' constitutional claims will be considered first.

Plaintiffs' constitutional claims allege that instituting debt collection lawsuits in Harrisburg, Pennsylvania constitutes a denial of an opportunity for plaintiffs, residents of Western Pennsylvania, to defend against the lawsuits. It is thus alleged that in acting in a manner which deprives plaintiffs of a meaningful opportunity for a hearing on PHEAA's claims, PHEAA has deprived plaintiffs of rights secured to them by the due process clause of the Fourteenth Amendment to the United States Constitution.

Access to a judicial forum has seldom been the subject of due process analysis. Guidance, however, can be found in the case of *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). *Boddie* was a class action brought on behalf of all female welfare recipients residing in Connecticut and wishing divorces, but prevented from bringing divorce suits by Connecticut's statutes requiring payment of court fees and costs for service of process as a condition precedent to access to the courts. The plaintiffs sought in the United States

District Court for the District of Connecticut a judgment declaring the statutes invalid as applied to the class, and an injunction requiring defendant to permit members of the class to sue for divorce without payment of any fees and costs. A three judge court dismissed the complaint for failure to state a claim. On appeal, the Supreme Court of the United States reversed. In an opinion by Justice Harlan, it was held that a state denies due process of law to indigent persons by refusing to permit them to bring divorce actions except on payment of court fees and service of process costs which they are unable to pay. *Boddie* at 376–377, 91 S.Ct. at 785 is particularly instructive:

"Thus, although they assert here due process rights as would–be plaintiffs, we think appellants' plight, because resort to the state courts is the only avenue to dissolution of their marriages, is akin to that of defendants faced with exclusion from the only forum effectively empowered to settle their disputes. Resort to the judicial process by these plaintiffs is no more voluntary in a realistic sense than that of the defendant called upon to defend his interests in court. For both groups this process is not only the paramount dispute–settlement technique, but, in fact, the only available one."

*Boddie* therefore stands for the proposition that access to court is a fundamental prerequisite of due process where such a forum is the only one available for a resolution of the particular dispute.

To be sure, *Boddie* does not sanction indiscriminate access to all tribunals at all times and under all circumstances. Thus, it is not surprising that the Supreme Court refused to invalidate a filing fee of $50 for indigent persons seeking a discharge in bankruptcy. *United States v. Kras*, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973). The Court understandably rejected such a challenge primarily noting that other modes of resolving the problem were open to Kras. Resort to the bankruptcy court, therefore, was not the exclusive path to relief. Similarly, *Ortwein v. Schwab*, 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973) held that indigents did not have unqualified access to

appellate review of an administrative determination. Again, the appellate procedure was not the sole means of dispute resolution. In fact, the appellants in *Ortwein* had the benefit of administrative hearings. The hearings provided a procedure, not conditioned on the payment of any fee, through which to seek redress of their grievances. *Kras* and *Ortwein* cannot be fairly read to govern the case *sub judice*.

■ Plaintiffs have been involuntarily summoned to defend their interests in a court to which they do not have access. Due process requires that persons forced to settle their claims through the judicial process must be given a meaningful opportunity to be heard. Plaintiffs are being denied any opportunity to be heard by the systematic filing of lawsuits in Harrisburg.

■ Subsequent to *Boddie*, the United States Supreme Court set forth a now commonly used three–factor test in *Matthews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) to determine what due process is required in a given situation. The Court stated:

"Our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interests that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335 to 336, 96 S.Ct. at 903.

An analysis of these three factors in the instant case results in a decision consistent with that reached by relying on *Boddie*.

First, the private interest affected by the official action is substantial. The access of indigent defendants to the judicial process is at stake. Secondly, there is a substantial risk of an erroneous deprivation of such interest. Indigent members of the plaintiff

class are unable by definition to defend lawsuits instituted in Harrisburg. In each case, therefore, access to the judicial system is lost. Of course, additional or substitute procedural safeguards in the form of requiring suit close to home constitutes the relief sought by plaintiffs. Finally, the procedure of requiring suit to be filed near the residence of the debtor involves a negligible fiscal and administrative burden. Present procedure, by admission of the PHEAA, is primarily followed because of its convenience and the cooperation afforded to the PHEAA by the personnel staffing the Dauphin Court of Common Pleas. Institution of suit in Western Pennsylvania hardly places the PHEAA in a burdensome position. Pennsylvania Rule of Civil Procedure 205.1 provides: "Any legal paper not requiring the signature of, or action by, a judge prior to filing may be delivered or mailed to the Prothonotary, Sheriff or other appropriate officer accompanied by the filing fee if any. Neither the party nor the party's attorney need appear personally and present such paper to the officer." By filing its complaint via mail, PHEAA can afford itself the same administrative convenience as currently exists while insuring that the defaulting defendants have a meaningful opportunity to be heard. The constitutional test of *Matthews v. Eldridge*, therefore, also indicates that the plaintiff class is being denied due process of law by the institution of suit in Harrisburg.

While this Court can prevent future violations of due process by enjoining the institution of future lawsuits in Harrisburg, neither party has addressed or considered the proper remedy for lawsuits already filed. PHEAA should approach the Court of Common Pleas of Dauphin County and request transfer of the existing lawsuits to the appropriate Western Pennsylvania court. *Leomporra v. American Baking Company, Inc.*, 182 A.2d 917, 198 Pa.Super. 545 (1962); 10 P.L.E. § 192. However, the parties are free to pursue a mutually agreeable alternative if desired.

 In addition to its constitutional claims, the plaintiff class contends it is also entitled to relief under Section 1983 based upon the Pennsylvania tort of abuse of process. Conduct which is tortious under state law can give rise to a cause of action under Section 1983 when it is undertaken under color of state law, and when it results in a deprivation of any rights, privileges and immunities secured by the Constitution and laws of the United States. The United States Court of Appeals for the Third Circuit has definitively held that abuse of process may be the basis for a § 1983 claim when occurring under color of state law. *Jennings v. Shuman*, 567 F.2d 1213 (3rd Cir. 1977). Needless to say, however, the existence of an abuse of process under state law must be shown. A review of *Jennings, supra*, indicates that the Pennsylvania state tort of abuse of process has essentially been defined as the use of lawful process for extortionate means. The Court is unable to mold the present facts into such a definition. Extortion, or conduct of a similar nature, was not the purpose of the PHEAA. As previously indicated, the PHEAA largely instituted all suits in Harrisburg because of convenience. While the PHEAA may have used bad judgment, there is no question that they did not utilize distant forum lawsuits for extortionate reasons. Accordingly, the claims of the plaintiff class under Section 1983 based upon the state tort of abuse of process will be denied.

Having reviewed the various claims of the plaintiff class under Section 1983, the Court now turns to the alleged cause of action under the Higher Education Resources and Assistance Act of 1965, 20 U.S.C. § 1701 *et seq.* In this regard, plaintiffs allege that by the Higher Education Resources and Assistance Act, the Commissioner of Education of the Department of Health, Education and Welfare was authorized to direct the federal student loan guarantee program for the purpose of encouraging states to establish loan insurance programs for students seeking higher education. The Commonwealth of Pennsylvania created the PHEAA to administer just such a guaranteed student loan program in Pennsylvania. As a result of two agreements between the PHEAA and the Commissioner of Education, the Commissioner has undertaken to guarantee 100% of the losses suffered by PHEAA that arise out of

PHEAA's administration of the Pennsylvania Guaranteed Student Loan Program, including losses occasioned by borrowers defaulting on their student loan obligations and administrative costs resulting from collection efforts. The Commissioner's duty to cover PHEAA's losses is in part conditioned upon PHEAA's undertaking administrative and fiscal efforts to insure due diligence in effecting the collection of loans insured by the Federal Guaranteed Student Loan Program. Plaintiffs contend that PHEAA has not been exercising due diligence and that a private remedy exists in their favor for such a violation.

■ The primary factors to be used in determining whether a private remedy can be implied to redress violations of federal legislation is whether the plaintiff is one of the class for whose special benefit the statute was enacted. *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). As plaintiffs correctly contend, an implied private remedy under the Higher Education Resources and Assistance Act was recognized in *DeJesus Chavez v. L.T.V. Aerospace Corp.*, 412 F.Supp. 4 (N.D.Tex.1976). Chavez brought suit on her own behalf and on behalf of all others similarly situated, alleging that defendants violated the Higher Education Act. Chavez alleged that defendants charged plaintiff for items not authorized by the statutes and regulations promulgated pursuant thereto; that defendants charged plaintiff sums not applied to their tuition but rather passed on to the lenders and that these charges exceeded the maximum interest rate allowable for their student loans; and that defendants passed on the cost of making the loan to plaintiffs in the form of higher tuition charges or otherwise in violation of federal statutes. The court thereafter concluded that Chavez was indeed one of the class for whose special benefit the statute was enacted and that student borrowers were a primary concern of the Higher Education Act.

■ The Higher Education Act, however, was enacted for the benefit of others in addition to students. The *Chavez* case involved a violation of statutory provisions enacted for the benefit of students, specifically interest rate regulations. The provision in dispute in the case *sub judice*, however, was enacted for the benefit of the federal government. The states were required to exercise due diligence in the collection of delinquent monies so as to minimize federal guarantee obligations. A statute such as the Higher Education Act with many beneficiaries must be analyzed in terms of the provisions alleged to be the basis of action. The due diligence provision, unlike the interest rate regulations in *Chavez*, was enacted for the benefit of federal government. It would be anomolous to hold that a provision enacted for the benefit of the federal government creates a private cause of action for defaulting students. Accordingly, plaintiffs' claim under the due diligence provision of the Higher Education Resources and Assistance Act of 1965 will be denied.

■ Lastly, plaintiffs contend that this Court should assume pendent jurisdiction of plaintiffs' state law claims and grant plaintiffs relief from the use of distant forum lawsuits under the Pennsylvania Unfair Trade Practices and Consumer Protection Act. 73 P.S. § 201–1 *et seq.* Plaintiffs correctly urge the exercise of pendent jurisdiction since there is a common nucleus of operative fact. The Pennsylvania Unfair Trade Practices and Consumer Protection Act, however, seeks to prevent conduct the nature of which can be generally characterized as fraudulent or deceptive. In the instant case, PHEAA was assigning priority to its own convenience rather than due process rights of defaulting students. Again, it may have exercised bad judgment but the characterization of that shortcoming as fraudulent or deceptive is inaccurate. Furthermore, there is no reason to force the facts involved in the instant litigation into an ill adapted statutory theory which is primarily consumer oriented where plaintiffs have otherwise available a remedy and means for redress of their grievances. Accordingly, plaintiffs' request for relief under the Pennsylvania Unfair Trade Practices and Consumer Protection Act will also be denied.

■ Among the many other contentions raised by both parties, two require brief mention. First, PHEAA alleges that the

724

doctrine of abstention is applicable to the instant controversy. If so, this Court would defer to state resolution of such claims. The doctrine of abstention is uniquely inappropriate in the case *sub judice* where the plaintiff class does not have access to the court which constitutes the state remedy. Secondly, plaintiff class has contested the constitutionality of the PHEAA's use of confession of judgment. This argument should be properly raised as a defense in the action which will subsequently be in Western Pennsylvania.

In accordance with the foregoing, plaintiffs' motion for summary judgment will be granted and defendants' motion for summary judgment will be denied. An appropriate order will issue.