724 F.Supp. 803 (1989)
ST. MARY OF THE PLAINS COLLEGE, Plaintiff,
v.
HIGHER EDUCATION LOAN PROGRAM OF KANSAS, INC., Defendant.
No. 89-1460-C.
United States District Court, D. Kansas.
October 3, 1989.
*804 Wayne Hartke, Hartke and Hartke, Falls Church, Va., Gary Ayers and Robert L. Heath, Foulston & Siefkin, Wichita, Kan., for plaintiff.
Robert F. Bennett, Patrick D. Gaston, and Patricia A. Bennett, Bennett, Lytle, Wetzler, Winn & Martin, Prairie Village, Kan., for defendant.

MEMORANDUM AND ORDER
CROW, District Judge.
The case comes before the court on the defendant's motion to dismiss. Plaintiff, St. Mary of the Plains College (St. Mary's), filed this action on August 22, 1989, seeking a declaratory judgment and injunctive relief concerning certain rights claimed by it under the Higher Education Act of 1965, as recently amended by the Higher Education Amendments of 1986, 20 U.S.C. §§ 1070 et seq. With its complaint, plaintiff also filed an application for a temporary restraining order, preliminary and permanent injunction. Upon notice to the defendant, the court heard plaintiff's application for a temporary restraining order (TRO) on August 25, 1989, at 9:30 a.m. Counsel for both parties appeared and presented arguments. The court granted plaintiff's application from the bench and entered the order that same day. This relief was then extended into a preliminary injunction upon an agreed order filed September 29, 1989.
In its complaint, plaintiff alleges the Secretary of Education has determined it to be an institution eligible for participation in various Title IV federal financial assistance programs including the federal Guaranteed Student Loan Program, now known as the Robert T. Stafford Student Loan Program (SSLP), 20 U.S.C. §§ 1071 et seq. St. Mary's has contracted with the American Truck Driving School (ATDS) to perform the correspondence portion (lesson materials) of a truck driving program while ATDS offers the residential portion or behind-the-wheel training. In the "Institutional Eligibility Notice" from the Department of Education dated August 4, 1988, St. Mary's was informed, inter alia, that its truck driving program in conjunction with ATDS was also eligible to apply to participate in the Title IV financial assistance programs including the guaranteed student loan program.
Defendant, Higher Education Loan Program of Kansas, Inc. (K-HELP), is a private corporation serving as the lender of last resort for Kansas under the SSLP, 20 U.S.C. § 1078(j), which provides:
In each State, the guaranty agency or an eligible lender in the State described in section 435(d)(1)(D) of this Act (20 USCS § 1085(d)(1)(D)) shall make loans directly, or through an agreement with an eligible lender or lenders, to students eligible to receive interest benefits paid on their behalf under subsection (a) of this section who are otherwise unable to obtain loans under this part (20 USCS §§ 1071 et seq.). Loans made under this subsection shall not exceed the amount of the need of the borrower, as determined under subsection (a)(2)(B), nor be less than $200. The guaranty agency shall consider the request of any eligible lender, as defined under section 435(d)(1)(A) of this Act (20 USCS § 1085(d)(1)(A)), to serve as the lender-of-last-resort pursuant to this subsection.
Plaintiff alleges K-HELP was violating this statutory duty in denying loan application of eligible students who were seeking *805 to attend St. Mary's truck driving program and who were not residents of Kansas. Plaintiff also contends these actions of K-HELP essentially constituted an independent review and overruling of the Secretary's determination of St. Mary's eligibility. Plaintiff insists K-HELP had no statutory or regulatory authority for denying these loans. Plaintiff asserts this court has jurisdiction of this case pursuant to 28 U.S.C. § 1331, as it arises under and seeks enforcement of a federal statute, 20 U.S.C. §§ 1071 et seq.
K-HELP filed its motion to dismiss on the same day that the court heard plaintiff's application for a temporary restraining order. Defendant therein moved to dismiss the complaint and the application "on the grounds that Plaintiff lacks standing to assert the claim filed herein." (Dk. # 6). At the TRO hearing, defendant's counsel argued that the court lacked jurisdiction of the application and complaint on the same grounds set forth in the memorandum. The court cursorily reviewed defendant's motion before ruling from the bench on the plaintiff's application. The court applied the controlling law on standing and found it had jurisdiction over plaintiff's application, but the court expressly reserved its ruling on defendant's motion to dismiss the complaint pending receipt of plaintiff's memorandum in response. Having received and read plaintiff's response and defendant's supplemental memorandum and having conducted its own research, the court is ready to decide the motion to dismiss.
The law cited and arguments made in its motion do not concern the issue of standing, contrary to defendant's conclusion. Standing is a jurisdictional requirement having both constitutional and prudential dimensions. Standing is an element of the Article III limit on federal courts to resolve only "cases" and "controversies." Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 471-476, 102 S.Ct. 752, 757-61, 70 L.Ed.2d 700 (1982). Even where Article III principles of standing may be met, the Supreme Court has applied an additional set of prudential considerations which bear on the issue of standing. Id. at 474-475, 102 S.Ct. at 759-60. The relevant principles governing a challenge to standing were discussed and applied by this court during its bench ruling.
None of these standing principles or the germane case law are found in defendant's motion or memoranda. Instead of a motion to dismiss for lack of jurisdiction on the ground of standing, defendant is actually moving to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for the lack of an express or implied cause of action under the asserted federal statute. The issue of whether a cause of action exists is not one of jurisdiction. Burks v. Lasker, 441 U.S. 471, 476 n. 5, 99 S.Ct. 1831, 1836 n. 5, 60 L.Ed.2d 404 (1979). However, if there is no cause of action, then obviously the court also would have no jurisdiction of the case as pled by the plaintiff. When the federal statute serves as both the basis for the court's subject matter jurisdiction and the plaintiff's substantive claim, the motion to dismiss for lack of jurisdiction should not be granted unless the claim is immaterial, insubstantial, or frivolous. Clark v. Tarrant County, Texas, 798 F.2d 736, 741-742 (5th Cir.1986). See also Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); Black v. Payne, 591 F.2d 83, 86 n. 1 (9th Cir.), cert. denied, 444 U.S. 867, 100 S.Ct. 139, 62 L.Ed.2d 90 (1979). Where defendant's motion challenges both jurisdiction and the existence of a federal cause of action, the court should find jurisdiction and determine the merits of the claim pursuant to Rule 12(b)(6). Chiles v. Crooks, 708 F.Supp. 127, 129 (D.S.C.1989). See also Wheeler v. Hurdman, 825 F.2d 257, 259 (10th Cir.), cert. denied, 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987). Since plaintiff's claim is not insubstantial or frivolous, the court will treat the defendant's motion as going to the merits of whether a private cause of action exists under the SSLP.
Merely because a federal statute has been violated and some person or entity harmed does not necessarily mean a private cause of action exists in favor of *806 those harmed. Cannon v. University of Chicago, 441 U.S. 677, 688, 99 S.Ct. 1946, 1952-53, 60 L.Ed.2d 560 (1979). The focal point in determining whether to infer a private cause of action from a federal statute is Congress' intent at the time of enacting the statute. Thompson v. Thompson, 484 U.S. 174, 177-79, 108 S.Ct. 513, 515-16, 98 L.Ed.2d. 512, 519 (1988). Congress' intent is discerned with the aid of statutory construction and the four factors identified in Cort v. Ash, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087-88, 45 L.Ed.2d 26 (1975). Thompson, 484 U.S. at 177-80, 108 S.Ct. at 515-17, 98 L.Ed.2d. at 519-20. The four factors identified in Cort include:
First, is the plaintiff one of the class for whose especial benefit the statute was enacted  that is, does the statute create a federal right in favor of plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?
Cort, 422 U.S. at 78, 95 S.Ct. at 2088 (internal quotations and citations omitted) (emphasis in original). These four factors are not of equal weight, as the second and third factors are traditionally relied upon in deciding whether to infer a private cause of action. Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 145, 105 S.Ct. 3085, 3091-92, 87 L.Ed.2d 96 (1985); Transamerica Mortgage Advisors v. Lewis, 444 U.S. 11, 23-24, 100 S.Ct. 242, 249, 62 L.Ed.2d 146 (1979); Touche-Ross & Co. v. Redington, 442 U.S. 560, 575-76, 99 S.Ct. 2479, 2488-89, 61 L.Ed.2d 82 (1979) ("language and focus of the statute, its legislative history, and its purpose"). Since Cort the Supreme Court has repeatedly stated that the critical inquiry is the intent of Congress. Merrill Lynch, Pierce, Fenner & Smith v. Curran, 456 U.S. 353, 377-78, 102 S.Ct. 1825, 1838-39, 72 L.Ed.2d 182 (1982) (and cases cited therein). The ultimate question for a court is not whether it believes a private cause of action would improve or build upon a statutory scheme created by Congress. Touche & Ross Co., 442 U.S. at 578, 99 S.Ct. at 2490. "(U)nless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist." Northwest Airlines, Inc. v. Transport Workers Union, 451 U.S. 77, 94, 101 S.Ct. 1571, 1582, 67 L.Ed.2d 750 (1981).
The relevant provisions of 20 U.S.C. §§ 1071 et seq. do not expressly create a private cause of action for an institution, lender or student. When the federal statute is silent on the matter of a private cause of action, the court's analysis begins with the state of the law at the time the statute was enacted. Curran, 456 U.S. at 378, 102 S.Ct. at 1839. "It is always appropriate to assume that our elected representatives, like other citizens, know the law...." Cannon v. University of Chicago, 441 U.S. at 696-97, 99 S.Ct. at 1957-58. The important inquiry is what Congress perceived as "the law that it was shaping or reshaping." Curran, 456 U.S. at 378, 102 S.Ct. at 1839.
The state of the law in 1986 provided little basis for Congress to presume that an implied cause of action existed on behalf of institutions under the federal statutes governing the guaranteed student loan program. The only decision finding any private cause of action under these statutes was De Jesus Chavez v. LTV Aerospace Corp., 412 F.Supp. 4 (N.D.Tex.1976), which held that students had a private cause of action under the federally insured student loan program for excessive and improper costs and expenses charged to them. In 1980, another court held that students did not have a cause of action under the same program to enforce the statutory provision requiring the state or its contractual agent to exercise due diligence in the collection of delinquent loans. Phillips v. Pa. Higher Ed. Assistance Agency, 497 F.Supp. 712 (W.D.Pa.1980), rev'd on other grds, 657 F.2d 554 (3rd Cir.1981), cert. denied, 455 *807 U.S. 924, 102 S.Ct. 1284, 71 L.Ed.2d 466 (1982). The Phillips court distinguished the De Jesus decision on the ground that the due diligence provision was enacted to benefit the federal government, not the students. 497 F.Supp. at 723. In a related student financial assistance program, the federal College Work-Study program, 42 U.S.C. §§ 2751 et seq., two other courts found no implied private cause of action on behalf of the students. Student Govern. v. Wilberforce University, 578 F.Supp. 935 (S.D.Oh.1983), and Murphy v. Villanova University, 547 F.Supp. 512 (E.D.Pa.1982), aff'd 707 F.2d 1402 (3rd Cir.1983). Against this backdrop, the court is unable to infer congressional intent to create a private remedy because of its understanding of the state of the law.
Neither party has provided any legislative history, nor has the court found any, which would suggest that Congress even contemplated including a private cause of action. This is not surprising since the legislative history of a statute without an express private remedy for its violation is usually also silent on this matter. Cannon, 441 U.S. at 694, 99 S.Ct. at 1956.
While this court had little difficulty concluding for purposes of standing that plaintiff's interests fell within the zone of interests to be regulated under the SSLP, it is another matter to say that plaintiff is a member of the class for whose especial benefit the statute was enacted. The purposes of the SSLP, as outlined at 20 U.S.C. § 1071(a), speak only to benefitting qualified students. Though plaintiff observes that the relationship between the institution and student is necessarily symbiotic, this point alone does not reasonably sustain an inference that Congress intended to benefit institutions with the passage of the SSLP. Programs intended to benefit directly the institutions are provided in Title II and III of the Higher Education Act of 1965. The exact wording of 20 U.S.C. § 1078(j) makes no mention of institutions and only mandates that the lender of last resort provide loans to eligible students who are otherwise unable to obtain loans. The Supreme Court has found little reason to engraft a private remedy for a particular party when Congress has chosen to draft the statute as a general prohibition or command to an agency charged with the disbursement of public funds, rather than to state directly that certain rights are conferred upon a class that would include the plaintiff. Universities Research Assn. v. Coutu, 450 U.S. 754, 772, 101 S.Ct. 1451, 1462, 67 L.Ed.2d 662 (1979). Plaintiff is not a member of the class for whose especial benefit § 1078(j) was passed. See Bowling Green Jr. College v. U.S. Dept. of Educ., 687 F.Supp. 293, 296 (W.D.Ky.1988).
The next crucial evaluation is whether a private cause of action is compatible with the purpose and scheme of the statute. The Supreme Court has warned that "where a statute expressly provides" a means for enforcement, "a court must be chary of reading others into it." Lewis, 444 U.S. at 19-20, 100 S.Ct. at 246-47. Section 1082 of the SSLP vests the Secretary of Education with broad and substantial enforcement authority. The Secretary may sue and be sued in any federal district court. 20 U.S.C. § 1082(a)(1). The Secretary may "enforce, pay, or compromise, any claim on, or arising because of any such insurance or any guaranty agreement under section 428(c) (20 U.S.C.S. § 1078(c))...." 20 U.S.C. § 1082(a)(5). The Secretary is also authorized to impose civil penalties, after notice and a hearing, against a lender or guaranty agency for a violation or failure to carry out any provision of the SSLP or its implementing regulations. 20 U.S.C. § 1082(g)(1). The Secretary is empowered to compromise any of the penalties until either the matter is referred to the Attorney General or the lender or agency has commenced judicial review of a final agency determination. 20 U.S.C. § 1082(g)(5). In subsection (h), the Secretary is given additional powers to sanction lenders by limitations, suspensions or termination for misconduct, and all sanction decisions are subject to judicial review under the Administrative Procedure Act provisions, 5 U.S.C. §§ 556 and 557. Noticeably absent from these detailed powers and procedures is any provision for students *808 or institutions to proceed by suit against a lender.
In light of the extensive enforcement authority given to the Secretary under this program, this court is convinced that Congress intended this mechanism to be the exclusive means for ensuring a lender's compliance with the statutes and regulations. The implication of a private cause of action would seriously undercut, rather than complement, the Secretary's enforcement powers. For example, there would be little chance of a lender later curing or correcting its violation or compromising with the Secretary, if the lender was already entangled in litigation on the same matter with an institution and particularly if any correction or compromise could possibly constitute an admission of fault in any other litigation.
To read the restrictions placed on lenders as somehow also conferring benefits to the institutions which could be enforced outside of the provided administrative framework simply places too great a demand on the limited language of the statutes. This court is not alone in finding that the Higher Education Act, 20 U.S.C. secs. 1071 et seq., as amended in 1986, does not imply a private cause of action. See Graham v. Security Sav. and Loan, 125 F.R.D. 687 (N.D.Ind.1989) (Class action by students against several parties including lender for violating provisions of the guaranteed student loan program). Plaintiff erroneously relies as authority in this case on the decision of Continental Training Services, Inc. v. Cavazos, 709 F.Supp. 1443 (S.D.Ind. 1989). This decision does not address the issue of whether an institution has a private cause of action against a lender for violations of the SSLP. That court's finding that an institution may have a constitutionally protected property interest in its continued eligibility to receive Title IV funds is immaterial here, because the plaintiff has not alleged in its complaint any claim of being denied its constitutional rights to procedural due process. In addition, the protection of the Fifth Amendment was only triggered in Continental Training because of the adverse actions taken by the Secretary of Education. Plaintiff's complaint in the case sub judice does not allege comparable circumstances. As it is not the court's role to contrive a private cause of action where none can be inferred, the court must dismiss the plaintiff's complaint.
IT IS THEREFORE ORDERED that defendant's motion to dismiss is granted, and the preliminary injunction is vacated.